# HILLSBOROUGH,

## JANUARY TERM, A. D. 1846.

### BACHELDER *v.* DEAN.

If a tenant for years, authorized, by the terms of his lease, to pay the rent by making repairs, use for that purpose, with the consent of the lessors, and without accounting, materials belonging to them, he shall not, in accounting with the assignee of the reversion, charge him with their value.

If such tenant, by an agreement with the lessors, have liberty to erect a stable and shed, and make other needful and proper repairs, within a certain limit as to expense, and he makes repairs to that limit, but does not erect the buildings specified, the estimated expense of such buildings must be deducted from the amount claimed for the repairs made.

Notice of the assignment of the reversion, necessary to enable the assignee to maintain an action for the use and occupation after the expiration of the term, is sufficient, if given during the existence of the term.

Notice to quit pending the term is evidence to rebut the inference arising, from the tenant's holding over, that the landlord acquiesces in the continuance of the occupancy at the rent reserved by the lease.

ASSUMPSIT. The declaration contained two counts. The first on account annexed, for use and occupation of a

tavern stand from April 1, 1843, to December 20, 1844, $500. The second, for use and occupation of a tavern from April 1st to December 20, 1844. The plea was the general issue, with a set-off, $1,049.21. It appeared from the auditor's report that on the 27th of April, 1839, Livermore & Keyes being in possession of the tavern stand in question, as mortgagees, for the purpose of taking the profits, but not for the purpose of foreclosure, made a lease of the premises under seal, to Dean, the defendant, for the term of four years from the first of said April, excepting the timber, and somé other things not material in this case, at the annual rent of $200; to be paid as thereinafter set forth. By this lease the lessors authorize Dean to make alterations and improvements in and about the buildings, for the purpose of rendering them commodious for a tavern, as intimated by A. Whittemore, in his note to Livermore, dated April 17, 1839, to wit: " to move the barn from Shaw's, west of the house, and attach it to the other on the north-west corner, and raise the other when it is carried forward sufficiently so as to admit of a cellar for manure; to take down the old chimney and put one at each end of the house, and finish an entry in the place thereof. Then some alterations in the upper part will render the chambers more convenient; and to make such other improvements as the parties may think expedient; and to use, in and about said alterations and improvements, the boards, clapboards, and other lumber in and about the building, which were assigned by P. Tyler, the mortgagor, to the lessors."

The lessors agreed to allow Dean, " in payment of the rent aforesaid, all the money which Dean should lay out and expend for labor and materials, to be employed in and about said improvements, with interest on such money as shall be laid out and expended in advance of the rent, and fair and reasonable compensation for all the time and labor of the said Dean spent and performed in and about said

improvements. Provided, however, and it is hereby agreed, that the expenses of the alterations and improvements to be made shall not exceed six hundred dollars, without the consent of both parties."

Dean agreed to exercise his best judgment, &c., to keep a just and true account of all the money by him expended, &c., and of his time and labor; "and will also cause to be kept a true account of the boards, clapboards and other lumber assigned by said P. Tyler to L. and K., as aforesaid, which shall be used about the buildings;" will exhibit said accounts to the lessors, on request; will adjust the rent semi-annually, on the first of October and April, and apply the same to the payment of expenditures incurred; and if the rent shall pay the expenditures before the expiration of said term, will pay the rent which shall afterwards become due, in equal semi-annual payments, at the times aforesaid. The other covenants are not material in this case.

On the 14th of August, 1839, an agreement in writing, not under seal, was made between the parties, in which it was recited that the lessors had leased the premises to Dean; that Dean was by the lease authorized to make alterations and improvements, and that the expenses of such alterations and improvements should not exceed six hundred dollars; and that it appeared that in order to render the buildings commodious for a tavern, greater expenses than six hundred dollars must be incurred, and it was agreed by the parties "that said Dean might cause to be erected a new stable and shed, and make such further improvements in and about the premises as may be found to be necessary and proper, not exceeding in the expenses the sum of $400, in addition to the sum of six hundred dollars, authorized in the lease." The lessors approved of Dean's having cut certain timber from the premises, and authorize him to cut whatever timber may be necessary to be used about the buildings, and take stones from a dam, to be used for underpinning, with some other provisions, not material in this case.

The parties further agreed, that it should be optional with the lessors to pay said Dean at the expiration of the said term the balance which shall then be due him for expenditures in and about the premises, calculating according to the stipulations contained in the lease, or to allow the said Dean to occupy the premises until he shall be remunerated by the rent, use and occupation.

It appeared that between the execution of the lease and the 15th of October following, Dean, the defendant, expended for repairs, alterations and improvements on the buildings on the premises leased, the sum of one thousand dollars and upwards. If he is to be allowed for the whole amount so expended, the said sum with the interest is sufficient to pay the rent until the 20th of December, 1844, when he left the premises, and the plaintiff is not entitled to recover in this action.

The plaintiff contended that the whole expense of the alterations and improvements was limited by the lease and agreement to the sum of one thousand dollars; that Dean was authorized to use the materials belonging to the lessors, and that he did use timber, boards, &c., the value of which is to be deducted from the amount said Dean was authorized to expend, and that he is entitled to be allowed on account of rent only the balance of the sum of $1000, after such deduction. The value of the property thus taken and used was seventy-five dollars, amounting with interest to one hundred and six dollars and fifty cents. The defendant objected to the allowance of this sum, because it appeared that Keyes, one of the lessors, before the agreement was made in August, told Dean, the defendant, that it was not necessary to keep any account of the materials mortgaged by Tyler to the lessors, which he might use about the buildings, and the defendant contended that this was a waiver of any claim on the part of the lessors to make any deduction from the amount of the expenditures made by Dean on account of those materials. It

appeared that Dean did not build a new stable, as he was authorized by the agreement, but that he moved the old barn from Shaw's, and fitted it up as a stable, as was proposed in the lease. The plaintiff contended that Dean was not entitled to claim any compensation beyond the amount of six hundred dollars, as authorized by the lease, unless he built the new stable. It appeared that the lessors assigned their interest in the lease to Batchelder, the plaintiff, who gave Dean notice of the assignment, and a notice to quit, on the 29th day of April, 1843. No other notice to quit was given by said Batchelder, and the defendant contended that without such notice this action could not be supported.

*Farley* and *Fletcher*, for the plaintiff.

*Parker* and *Hazeltine*, for the defendants.

GILCHRIST, J. The defendant occupied the premises for the use and occupation of which the plaintiff has brought his action; in the first place under a lease for a term of three years, to be computed from the first day of April, 1839, at an annual rent of $200, which he was at liberty to pay by making certain repairs upon the premises, which were indicated in general terms in the indentures, but were not to exceed six hundred dollars.

By a supplemental agreement, which was put in writing, the defendant had authority to execute further improvements, including the erection of a stable and shed, and such other improvements as might be found to be necessary and proper. For these improvements, which were not to exceed four hundred dollars, the lessors, in whose place the plaintiff stands, had the option to pay him at the expiration of his term of three years, or to suffer him to remain in the occupancy of the estate until he should be remunerated by the rent at the rate stipulated in the lease.

In a little more than one year from the expiration of his term, he received notice from the plaintiff that the premises had been conveyed to him, and a request to terminate his occupation of them. The tenant had a right to occupy till the accumulated rent should amount to such sum as he had, consistently with the terms of the contract, expended in repairs and improvements; the lessors not having elected at the expiration of the term of three years to pay him for such improvements, but having suffered him to occupy in conformity with the other alternative provided in the contract. The plaintiff, coming in under the lessors, was bound by their acts, as was decided on a former occasion between these parties. His notice and request to the defendant to give up his possession before such time as the rent should remunerate him for the repairs, was of course of no avail to terminate the occupancy thus prematurely.

It was necessary, however, that the defendant should have notice of the assignment of the reversion, that he might know who was his landlord, before he could be subjected to an action in his behalf for rent or for use and occupation. This notice, it is obvious, might be given as well during the life of the lease as at its expiration, and was a proper notice to give immediately upon receiving the assignment that created the relation of landlord and tenant between him and the defendant.

To guard against the inference of the plaintiff's assent to extend the term of the defendant's occupancy for another year, from his tacit acquiescence in a holding over after the expiration of the time provided for by the contract, to be determined by the expense or value of the repairs, it was proper for the plaintiff to give notice that he should require the premises to be surrendered at the expiration of that time; for if the tenancy was renewed, the same rent and the same terms of half-yearly payment would be revived, by force of the legal inference arising in such cases. It is made a question whether the notice to quit on

Bachelder *v.* Dean.

the 29th day of April, 1843, was sufficient notice, and whether it ought not to have been renewed.

It seems that as the object for which the notice was available, was not to terminate a tenancy at will, in the ordinary form and conditions of such tenancies, but to prevent such a tenancy from taking place by inference upon the termination of a possession, of which the legal duration might be regarded as somewhat uncertain, depending upon the adjustment of mutual accounts, such notice was sufficient. It was an act sufficient to prevent the occupation, subsequent to the expiration of the term settled by the writing, from assuming the character of a tenancy from year to year, at the rent previously established, and payable as before, half-yearly.

The plaintiff has the right to treat the occupation subsequent to the term provided for by the contract, as strictly a tenancy at will, and the rent as payable on demand, according to the provisions of the statute ; Rev. Stat. 209, sec. 5; and it is not confined to half-yearly payments, as it would have been if the terms of the contract had been revived, either by express agreement, or by his acquiescence in the tenant's holding over.

Under the notice of a set-off, the defendant has proved that during his tenancy he made improvements and repairs upon the premises, somewhat exceeding one thousand dollars, the limit assigned by the lease and subsequent agreement, beyond which those papers did not authorize him to make repairs in payment of the rent.

Against the allowance of that sum, the plaintiff has interposed certain objections. In the first place, there has been admitted into the estimate an item of $75, which, with interest to the date of the report, amounted to $106.50, for timber used, which was the property of the lessors, and which had been furnished by them for the purpose of being used in the repairs. By the terms of the lease, the lessors were to allow in payment of the rent " all the

money which Dean should lay out and expend for labor and materials to be employed in the improvements, with interest on such sums as should be laid out in advance of the rent, and a reasonable compensation for his services; provided, that the expense of the alterations and improvements to be made should not exceed six hundred dollars." The tenant agreed to keep a true account of all the boards, clapboards, and other lumber described, and which is the lumber in question.

Now it seems to be very clear that as the rent was to be $200 a year, and the allowance to be made to the defendant was for money expended for labor and materials, for his own services and for interest, he could not claim an allowance for the lessors' own lumber which he used, and for which he did not pay, and so pay the lessors a debt with their own property.

But it is said that in the lease he agreed to keep a true account of such of those materials of the lessors as he might employ in the repairs, and that afterwards one of them excused him from keeping such an account; and from these facts the defendant infers that he is entitled to charge the value of them to this plaintiff.

The stipulation of the defendant to keep an account of those materials used was inserted in the lease for the benefit of the lessors. Its obvious use was to enable them to ascertain, with the least inconvenience, the quantity and quality taken. In dispensing with that service, which had been undertaken by the defendant, we may reasonably suppose they intended to dispense with precisely the benefits which they derived from it, and it is not necessary to suppose that they intended more. The obligation to account and to pay for the property of another, taken and used, is not founded upon an agreement to account; so, dispensing with such an agreement would not amount to a waiver of a claim for payment. Independently of the defendant's agreement to keep an account of the materials used, he

would not have had a right, as against the lessors, who owned them, to have added their value to his bill for repairs ; so the lessors, in dispensing with that agreement, must not be considered as having conceded to the defendant a thing so extraordinary.   The materials appear to have been furnished by the lessors for repairing their own buildings.   The reversion was assigned to the plaintiff, charged of course with the rights of possession, acquired by the defendant under the former owners.   The extent of these rights depends upon the amount he has expended within the terms of the lease and supplementary agreement.   There is no ground for swelling the amount of those expenditures, by adding to it what was expended by the lessors.   The set-off must, therefore, be diminished by the amount of this item.

By the agreement for further repairs, made in August, 1839, the defendant had liberty to erect a stable and shed upon the grounds, and to make such further improvements and repairs as might be found necessary, not to exceed in all the sum of four hundred dollars, in addition to the sum of six hundred dollars, provided for in the lease.

In the defendant's set-off of one thousand dollars for repairs, the expense of the stable and shed is not embraced, for the reason that no such buildings were erected; and the plaintiff contends that as the authorized repairs and improvements, to amount to the additional sum of $400, were to have comprehended these two buildings, this sum ought also to be stricken from the set-off.

This position is in part well founded, but the improvements authorized by the supplemental agreement were not only the stable and shed, but such further improvements "as may be found to be necessary and proper." Such appear to have been made, but not to have been authorized by the agreement to the extent of $400.   To ascertain how much should be allowed for them, the cost of the stable and shed should be deducted from the sum.   To do this,

the report may, in the discretion of the Court of Common Pleas, be recommitted, if necessary. The cost of the barn and stable, in addition to the other item of $106.50, should be deducted from the set-off, and judgment may then be made up on the report.